Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MAUREEN MERCADO SILVA<br><br>Demandante-Apelante<br><br>Vs.<br><br>WALMART PUERTO RICO INC., también haciendo negocios como SAM´S CLUB, et al.<br><br>Demandados-Apelados | TA2026AP00506 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Caso Núm. MZ2025CV00918<br><br>Sobre: DESPIDO INJUSTIFICADO BAJO LEY NÚM. 80 DE 1976, SEGÚN ENMENDADA, DISCRIMEN, DERECHOS CIVILES, DAÑOS Y PERJUICIOS |

Panel integrado por su presidente, el Juez Adames Soto, el Juez Cruz Hiraldo y el Juez Sánchez Báez.[1]

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2026.

Comparece la parte apelante, la señora Maureen Mercado Silva, solicita que revisemos una *Sentencia* notificada el 27 de febrero de 2026, por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Mediante el dictamen apelado, el foro primario desestimó la *Demanda* presentada por la parte apelante al amparo de la Regla 10.2(5) de las Reglas de Procedimiento Civil, *infra*.

Por los fundamentos que exponemos a continuación, *confirmamos* el dictamen apelado.

*-I-*

El 3 de junio de 2025 la parte apelante presentó la *Demanda* de epígrafe reclamando daños y perjuicios, despido injustificado

---

[1] Mediante la OATA-2026-063 emitida el 2 de junio de 2026, se designa al Hon. Nery E. Adames Soto en sustitución de la Hon. Ivelisse M. Domínguez Irizarry.

bajo la Ley Núm. 80 de 1976 y violaciones a derechos civiles en contra de la parte apelada del epígrafe. En suma, presentó reclamaciones por alegado despido injustificado al amparo de la Ley Núm. 80 de 30 de mayo de 1976, así como daños y perjuicios al palio del Código Civil de 2020. La parte apelante alegó que: (1) trabajó por más de 23 años para Wal-Mart Puerto Rico, Inc.; (2) fue objeto de marginalización y trato hostil por parte del personal gerencial; (3) fue objeto de discriminación por años por parte del patrono; (4) sufrió problemas médicos que dieron lugar a reclamaciones ante el Seguro por Incapacidad No Ocupacional (SINOT); (5) el patrono incurrió en negligencia en el manejo de del trámite administrativo ante SINOT; (6) fue despedida injustificadamente mientras se encontraba bajo licencia médica y tratamiento médico. El 3 de noviembre de 2025, la parte demandada presentó *Moción de Desestimación*, argumentó que, la *Demanda* no exponía hechos suficientes que justificaran la concesión de un remedio. La parte apelante presentó *Moción en Oposición a Moción de Desestimación*, aseveró que la *Demanda* establecía causas de acción plausibles y que la controversia debía dilucidarse en sus méritos previo al correspondiente descubrimiento de prueba. El 27 de febrero de 2026, el foro de primera instancia emitió la sentencia apelada en la cual desestimó con perjuicio las causas promovidas por la parte apelante. La parte apelante solicitó reconsideración y la parte apelada presentó oposición a la reconsideración. Finalmente, el 17 de abril de 2026, el foro apelado denegó la reconsideración. Inconforme, la parte apelante comparece y señala los siguientes errores:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO Y DE MANERA PREMATURA LA DEMANDA AL AMPARO DE LA REGLA 10.2 CUANDO ESTA EXPONÍA HECHOS SUFICIENTES QUE JUSTIFICABAN LA CONCESIÓN DE UN REMEDIO.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL RESOLVER CONTROVERSIAS DE HECHOS AL EVALUAR LA MOCIÓN DE DESESTIMACIÓN, CONTRARIO AL ESTÁNDAR JURISPRUDENCIAL APLICABLE CUANDO SE ATIENDE UNA MOCIÓN DE DESESTIMACIÓN AL AMPARO DE LA REGLA 10.2 DE PROCEDIMIENTO CIVIL Y CONTRARIO A LO RESUELTO POR LA JURISPRUDENCIA INTERPRETATIVA ESTABLECIDA POR EL TRIBUNAL SUPREMO DE PUERTO RICO, IMPONIENDO, ADEMÁS, UN ESTÁNDAR DE ADJUDICACIÓN QUE IMPONE REQUISITOS MÁS RIGUROSOS, QUE AQUELLOS PAUTADOS EN NUESTRO ORDENAMIENTO PROCESAL CIVIL AL MOMENTO DE RADICAR UNA ALEGACIÓN.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR PREMATURAMENTE LA EXISTENCIA DE JUSTA CAUSA PARA EL DESPIDO, SIN PERMITIR EL DESCUBRIMIENTO DE PRUEBA ENTRE LAS PARTES Y SIN DAR PASO A LA OPORTUNIDAD DE CELEBRACIÓN DE UN JUICIO EN SUS MÉRITOS REPRESENTANDO DICHA DETERMINACIÓN UN FRACASO A LA SANA ADMINISTRACIÓN DE LA JUSTICIA EN FAVOR DE LA PARTE APELANTE-DEMANDANTE.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESCARTAR LAS RECLAMACIONES DE DAÑOS BAJO EL CÓDIGO CIVIL DE PUERTO RICO DE 2020 POR ENTENDER QUE ESTABAN DESPLAZADAS POR LEGISLACIÓN LABORAL ESPECIAL, IGNORANDO JURISPRUDENCIA APLICABLE QUE PERMITE RECLAMACIONES INDEPENDIENTES Y EN ESTE CASO ERA UNO CIVIL ORDINARIO QUE CONTENÍA MÚLTIPLES CAUSALES DE ACCIÓN Y NO ESTRICTAMENTE BAJO UNA LEY LABORAL ESPECIAL.

La parte apelada también compareció mediante alegato escrito. Por tanto, procedemos a resolver la presente apelación con el beneficio de la comparecencia de las partes, el contenido del expediente electrónico y el *Derecho* aplicable.

## -II-

### -A-

La Regla 6.1 de Procedimiento Civil ilustra que una alegación que exponga una solicitud de remedio deberá contener: "(1) [u]na relación sucinta y sencilla de los hechos demostrativos de que la

parte peticionaria tiene derecho a un remedio, y (2) una solicitud del remedio a que crea tener derecho. [...]". 32 LPRA Ap. V. Basta con que, la parte demandante provea información preliminar sobre los hechos demostrativos ya que, posteriormente, podrá ser ampliada como producto de los procedimientos del descubrimiento de prueba. J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, 3ra ed. rev., Bogotá, Ed. Nomos, 2023, pág. 92. Bajo este esquema, no resulta necesario exponer detalladamente todos los hechos que dan base a la reclamación. Informe de Reglas de Procedimiento Civil, Secretariado de la conferencia Judicial y Notarial, marzo 2008, pág. 70. Es norma reiterada que, el propósito general de las alegaciones contenidas en una demanda es notificar a la parte contraria, a grandes rasgos, cuáles son las reclamaciones en su contra de tal forma que pueda comparecer a defenderse si así lo desea. *Rivera, Lozada v. Universal*, 214 DPR 1007, 1021 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 395 (2022); *León v. Rest. El Tropical*, 154 DPR 249, 262 (2001).

En aras de permitirle a la parte demandada preparar su defensa, la demanda debe ofrecer un nivel mínimo de especificidad que permita identificar los actos imputados y el daño alegadamente causado. *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020). La Regla 6.5 de Procedimiento Civil dispone que "cada aseveración en una alegación será sencilla, concisa y directa. No se exigirán fórmulas técnicas para la redacción de las alegaciones o mociones. Todas las alegaciones se interpretarán con el propósito de hacer justicia". 32 LPRA Ap. V. El objetivo primordial de las alegaciones es advertir a la parte adversa sobre los hechos y las reclamaciones que se le plantean durante el trámite judicial. *León Torres v. Rivera Lebrón*, *supra*, pág. 40.

**-B-**

La Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, faculta a la parte contra la cual se presente una alegación en su contra a presentar una moción de desestimación, por los fundamentos siguientes: 1) falta de jurisdicción sobre la materia; 2) falta de jurisdicción sobre la persona; 3) insuficiencia del emplazamiento; 4) insuficiencia del diligenciamiento del emplazamiento; 5) dejar de exponer una reclamación que justifique la concesión de un remedio, y 6) dejar de acumular una parte indispensable. *Inmob. Baleares et al. v. Benabe et al.*, 214 DPR 1109, 1128 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823, 833 (2024); *Costas Elena y otros v. Magic Sports y otros*, 213 DPR 523, 533 (2024); *Cobra Acquisitions v. Mun. Yabucoa et al*, 210 DPR 384, 396 (2022); *Rivera Sanfeliz et al. v. Jta. Dir. First Bank*, 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013). La precitada regla permite a la parte demandada presentar una moción de desestimación debidamente fundamentada previo a contestar la demanda instada en su contra. *Conde Cruz v. Resto Rodríguez et. al.*, 205 DPR 1043, 1065 (2020); *Casillas Carrasquillo v. ELA*, 209 DPR 240, 247 (2022). Cuando se presenta una moción de desestimación al amparo de la Regla 10.2(5), la desestimación pretendida se refiere a los méritos de la controversia y no a los aspectos procesales del caso. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025).

Al momento de considerar una moción de desestimación, los tribunales están obligados a tomar como ciertos todos los hechos bien alegados en la demanda y, a su vez, considerarlos de la forma más favorable a la parte demandante. *Cobra Acquisitions v. Mun. Yabucoa et al*, supra, pág. 396; *Costas Elena y otros v. Magic Sports y otros*, supra, pág. 533; *Blassino, Reyes v. Reyes Blassino*, supra, pág. 833; *Casillas Carrasquillo v. ELA*, supra, pág. 247;

*BPPR v. Cable Media,* supra; *Cruz Pérez v. Roldán Rodríguez et al.,* 206 DPR 261, 267 (2021); *Colón Rivera et al. v. ELA,* supra, pág. 1049. Luego, le corresponde determinar si, a base de los hechos aceptados como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. *Costas Elena y otros v. Magic Sports y otros,* supra, pág. 534. Si el Tribunal entiende que no se cumple con el estándar de plausibilidad, se debe desestimar la demanda, pues no debe permitir que proceda una reclamación insuficiente bajo el pretexto de que se podrán probar las alegaciones conclusorias con el descubrimiento de prueba. *Íd.* Véase, además, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil,* 6.a ed., San Juan, Ed. LexisNexis, 2017, pág. 307.

Es por lo que, para que proceda una moción de desestimación, "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de [D]erecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor".[2] *Cobra Acquisitions v. Mun. Yabucoa et al,* supra, pág. 396; *Casillas Carrasquillo v. ELA,* supra, pág. 247; *Cruz Pérez v. Roldán Rodríguez,* supra, págs. 267-268; *BPPR v. Cable Media,* supra; *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150; *Blassino, Reyes v. Reyes Blassino,* supra, pág. 833. Bajo este criterio, procederá la desestimación de la demanda si aun interpretando la reclamación de forma liberal, no hay remedio alguno disponible en el estado de Derecho. *Íd.*; *BPPR v. Cable Media,* supra.

Nuestra más Alta Curia ha reiterado que, una demanda no deberá ser desestimada a menos que la razón para solicitar el

---

[2] *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013*); López García v. López García,* 200 DPR 50, 69-70 (2018).

remedio no proceda bajo supuesto de derecho alguno, ni pueda ser enmendada con el propósito de subsanar cualquier posible deficiencia. *Díaz Vázquez et al. v. Colón Peña et al.,* supra, pág. 1150.

-*C*-

Quien por culpa o negligencia le causa daño a otra, tal persona viene obligado a repararlo. Artículo 1536 del Código Civil, 31 LPRA sec. 10801. La culpa o negligencia "consiste en la falta del debido cuidado, por no anticipar ni prever las consecuencias de un acto u omisión, que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores v. Hospital Ryder Memorial, Inc.*, 210 DPR 465, 484 (2022); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976-977 (2021). El daño es definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". *Camacho Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 42; *López v. Porrata Doria*, 169 DPR 135, 151 (2006). De no existir daño o perjuicio, no existe obligación de indemnizar. *López v. Porrata Doria, supra*, pág. 151. Los daños se dividen en patrimoniales y no patrimoniales. *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 505 (2009). Los primeros consisten en el menoscabo monetario sobre el patrimonio del perjudicado. *Íd.*, págs. 505-506. Los daños no patrimoniales "son en principio aquellos cuya valoración en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria". *Íd.*, pág. 506. Además de un daño real y un acto culposo o negligente, es esencial la existencia de un nexo causal entre ambos para apoyar una reclamación de daños y perjuicios. *Nieves Díaz v. González Massas*, 178 DPR 820, 844-845 (2010). La doctrina de causalidad dispone que "no es causa toda condición

sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Nieves Díaz v. González Massas, supra*, pág. 844; *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974).

### -D-

La prescripción es una figura que extingue un derecho, debido a que una parte no lo ejerce en un período de tiempo determinado por ley. Art. 1189 del Código Civil, 31 LPRA sec. 9481; *Rivera Ruiz et al. v. Mun. de Ponce et al.*, 196 DPR 410 (2016). Los plazos de prescripción comienzan a transcurrir cuando el promovente de una acción conoce o debió conocer la existencia del derecho a reclamar y la identidad de la persona contra quien puede actuar. Art. 1190 del Código Civil, 31 LPRA sec. 9482. En nuestro ordenamiento jurídico se reconocen tres mecanismos que interrumpen los términos prescriptivos dispuestos en ley, a saber: (1) el ejercicio de la acción ante los tribunales; (2) la reclamación extrajudicial; y (3) cualquier acto de reconocimiento de la obligación por parte del deudor. Art. 1197 del Código Civil, 31 LPRA sec. 9489. *Nevárez Agosto v. United Surety et. al.*, 209 DPR 346 (2022); *Rivera Ruiz et al. v. Mun. De Ponce et al.*, *supra,* pág. 415.

### -E-

La Ley de Beneficios por Incapacidad Temporal, Ley Núm. 139 de 26 de junio de 1968, según enmendada, 11 LPRA sec. 201 *et seq.* (Ley Núm. 139), establece un seguro para cubrir el riesgo por incapacidad no ocupacional y sustituir la pérdida de salarios ante esa eventualidad. *Torres González v. Depto. del Trabajo*, 127 DPR 931, 936 (1991). La referida ley provee beneficios monetarios a los trabajadores y persigue atenuar la pérdida de ingresos cuando un obrero no pueda desempeñar los deberes de su empleo por padecer de una inhabilidad causada por una lesión o

enfermedad no relacionada con el empleo. *Meléndez v. Asoc. Hosp. del Maestro,* 156 DPR 828, 842-844 (2002); 11 LPRA sec. 202(g). La Sección 3, inciso (q) de la Ley Núm. 139, 11 LPRA sec. 203(q), establece la obligación del patrono de reservar el empleo del obrero que cualifique para los beneficios. En lo pertinente el estatuto dispone:

> En los casos de incapacidad para el trabajo de acuerdo con las disposiciones de este capítulo [ley], el patrono vendrá obligado a reservar el empleo que desempeña el trabajador al momento de comenzar la incapacidad y a reinstalarlo en el mismo, sujeto a las siguientes condiciones:
>
> (1) Que el trabajador requiera al patrono que lo reponga en su empleo dentro del término de quince (15) días, contados a partir de la fecha en que fuere dado de alta, y siempre y cuando que dicho requerimiento no se haga después de transcurrido un (1) año desde la fecha de comienzo de la incapacidad;
>
> (2) que el trabajador esté mental y físicamente capacitado para ocupar dicho empleo en el momento en que solicite del patrono dicha reposición; y
>
> (3) que dicho empleo subsista al momento en que el trabajador solicite su reposición. Se entenderá que el empleo subsiste cuando el mismo esté vacante o lo ocupe otro trabajador. Se presumirá que el empleo estaba vacante cuando el mismo fuere cubierto por otro trabajador dentro de los treinta (30) días siguientes a la fecha en que se hizo el requerimiento de reposición.

Todo patrono que incumpla con las condiciones antes enumeradas está obligado a pagar al trabajador o a sus beneficiarios los salarios que el trabajador hubiere devengado de haber sido reinstalado en su empleo; además, de responder por los daños y perjuicios causados por su actuación. 11 LPRA sec. 203(q). El empleado está obligado por ley a solicitar la reposición en su puesto de trabajo dentro del término establecido por el estatuto, el cual se computa a partir de la fecha de la incapacidad

del empleado. *Rojas v. Méndez & Co., Inc.*, 115 DPR 50, 54 (1984). La reserva de empleo dispuesta en la sección 3 de la Ley Núm. 139 es similar al Artículo 5a de la Ley Núm. 45 del 18 de abril de 1935, según enmendada, conocida como "Ley del Sistema de Compensaciones por Accidentes del Trabajo", 11 LPRA sec. 1 *et seq.*, (Ley Núm. 45), la cual establece una protección a los trabajadores que sufren accidentes del trabajo. Específicamente, el referido articulo impone a los patronos la obligación de reservar el empleo de un trabajador lesionado por 12 meses contados a partir de la ocurrencia del accidente. *Rivera v. Ins. Wire Prods., Corp.*, 158 DPR 110, 126 (2002). El término para solicitar la reinstalación en el empleo es uno de caducidad no puede ser interrumpido. Una vez transcurrido el plazo sin que el empleado hubiera actuado, el mismo podrá ser despedido. *Torres v. Star Kist Caribe, Inc.*, 134 DPR 1024, 1036 (1994).

### *-III-*

Antes de resolver si procedía la desestimación de la presente demanda por dejar de exponer una reclamación que justifique la concesión de un remedio, reiteramos que damos por ciertas todas las alegaciones fácticas bien escritas contenidas en la demanda. Reglas 6.1, 6.2 y 6.5 de Procedimiento Civil, 32 LPRA Ap. V, R.6.1, 6.2, y 6.5. Es decir, excluimos en nuestra consideración las alegaciones en forma de conclusión, contradictorias, sin especificidad de hechos, las increíbles e inverosímiles, opiniones, asuntos hipotéticos, conjeturas y conclusiones de derecho contenidas en la demanda. *First Fed. Savs. v. Asoc. de Condómines*, 114 DPR 426, 431-432 (1983). Sin perder de vista estos principios fundamentales, emprendemos la tarea de evaluar la corrección de la actuación del foro de primera instancia al desestimar en su totalidad la demanda de título.

Al examinar las alegaciones de la demanda junto a los

elementos de las causas de acción incoadas, concluimos que no erró el tribunal de instancia al desestimar la demanda bajo el fundamento de que no se justificaba la concesión de un remedio. De las alegaciones ser probadas, estos hechos, junto a la evidencia que se pueda presentar para apoyar las conclusiones de derecho correspondientes, serían insuficientes para que concluir que se han configurado violaciones a nuestro ordenamiento jurídico bajo el principio de no causar daño, o la compensación de la mesada por despido injustificado. Veamos los hechos en la *Demanda*.

La parte apelante comenzó a trabajar como cajera en Sam's de Puerto Rico, Tienda de Mayagüez el 6 de febrero de 1999. Comenzó su trabajo como cajera luego ocupó una plaza de representante de servicio al cliente por unos tres años plaza en la cual fungió como recepcionista atendiendo llamadas telefónicas de clientes, consumidores, empleados más la impresión de reportes y sus carpetas para los gerentes y "Team Leaders" de las diferentes áreas de la tienda y cualquier otra tarea relacionada a las operaciones de su área que le fuera solicitada por los gerentes o supervisores directos. En el 2002 la parte apelante fue transferida al área de las puertas de entrada y salida como "door greeter". El puesto de recepcionista fue ocupado por Madeline Montalvo mientras culminada el periodo de embarazo de esta última. La parte apelada prometió a la parte apelante que, regresaría al puesto de recepcionista culminado el embarazo de Madeline Montalvo. Empero, la parte apelada continuó su labor en el área de las puertas del establecimiento comercial por 17 años hasta la fecha de despido el 13 de junio de 2022. En el año 2014 la parte apelante sufría de bajones de azúcar, hinchazón severa en el pie derecho, y una lesión en el dedo gordo del pie derecho. La lesión del dedo gordo requirió tratamiento y el uso de un zapato o bota especial estabilizadora. La parte apelante solicitó permiso para

poder usar la bota estabilizadora en su trabajo y también solicitó el uso de inyecciones de células madre para su pie, un beneficio provisto por la parte apelada. Pendiente el permiso de uso de la bota estabilizadora la parte apelante no trabajó en la puerta de entrada en la tienda. Finalmente, la parte apelada autorizó el uso de la bota especial y la parte apelante continuó con su trabajo en la puerta de entrada y salida.

Durante ese periodo de tiempo, entre los años de 2014 al 2019 la parte apelante sufrió accidentes de trabajo, pero no acudió a la Corporación del Fondo del Seguro del Estado a procurar tratamiento. En ese mismo periodo de tiempo en ocasiones los supervisores y gerenciales no permitían a la apelante disfrutar de un receso de 15 minutos cuando sus niveles de azúcar bajaban. También, en aquellos momentos, la parte apelante sufrió hemorragias y expulsaba sangre en ciertas áreas de su cuerpo que le impedían seguir trabajando y tenía que mostrar en los baños a alguna supervisora su situación para recibir autorización para ausentarse.

Al comienzo de la pandemia del COVID-19 después del 1 de diciembre de 2019 la parte apelada ordenó a los empleados en las puertas de entrada y salida el uso una máscara tipo "face shield". La parte apelante informó que, debido a sus condiciones de salud respiratoria no podía usar la máscara, y que, por sus fuertes dolores en sus extremidades y espalda solo podía trabajar en la puerta de salida. Entre el comienzo de la pandemia del COVID-19 y el 29 de abril de 2021, fecha cuando la parte apelante comenzó su primera licencia sin paga, comenzó a sufrir traumas en el tobillo, traumas corporales múltiples, hinchazón extrema en las piernas, ardor en las piernas, fuertes calambres que le impedían caminar y estar de pie e hinchazón en las piernas y tobillos. Debido a estas afecciones el patrono tuvo que, sentar en muchas

ocasiones a la parte apelante cerca del área de la puerta de la tienda. Las últimas tres ocasiones fueron en jornadas de trabajo seguidas. La parte apelada recomendó a la parte apelante procurar atención medica e inquirió de la apelante si las afecciones fueron causadas por sus labores en el trabajo. En aquel momento la parte apelante solo recibía tratamiento en la Corporación del Fondo del Seguro del Estado por una lesión en la rodilla acaecida durante su jornada laboral cuando fue impactada por un carrito de compras impulsado por un cliente de la tienda. La parte apelante solicitó al gerente de la tienda solo trabajar en la puerta de salida sin el uso de la máscara protectora, solicitud que fue aprobada por el gerente general. No obstante, la parte apelada fue asignada a trabajar al área de joyería en octubre de 2021. Sin embargo, contrario a lo indicado en las alegaciones, la parte apelante nunca pudo ocupar el puesto de trabajo en la joyería entre los meses de octubre y diciembre de 2021 pues estaba fuera por enfermedad sin paga desde el 29 de abril de 2021. Agregue que, su primer periodo de licencia sin paga comenzó el 29 de abril de 2021 hasta el 30 de mayo de 2021, y conforme a la alegación número 12 la parte apelante solicitó la extensión de su licencia en múltiples ocasiones durante el resto del año 2021. La parte apelada aprobó todas las solicitudes presentadas por la parte apelante durante aquel año, y las solicitadas a principios del año 2022. Conforme a las certificaciones medicas presentadas por la parte apelante durante el año 2021, y los primeros meses del año 2022, la apelante no podía volver a su trabajo pues sus condiciones de salud "le impedían moverse, y trabajar en su área asignada de trabajo", o "no era, posible para ella seguir en su trabajo". *Véanse,* alegaciones #9, 12, 31, 32, y 40. La parte apelante estuvo ausente de su trabajo bajo licencia por enfermedad sin sueldo desde el 29 de abril de 2021 hasta el mismo día de su despido el 13 de junio

de 2022. Por lo tanto, descartamos las alegaciones #56 a la #64 en torno a los supuestos incidentes ocurridos durante la vigencia de la licencia por enfermedad sin sueldo por contradictorias e increíbles al contrastarlos con el resto de los hechos relatados en la demanda. La parte apelante nunca trabajó en el área de joyería pues durante todo este tiempo estuvo fuera del trabajo en licencia por enfermedad sin paga. El propio contenido de las alegaciones verifica lo imposible del alegato en torno a este periodo de tiempo cuando supuestamente la parte apelante trabajó en el departamento de joyería mientras que, al mismo tiempo estuvo fuera del trabajo en licencia por enfermedad sin paga.

El 31 de mayo de 2021, la parte apelante completó la parte del formulario correspondiente al empleado en la solicitud de beneficios de SINOT, la parte apelada completó su parte, y el médico de cabecera de la parte apelante completó la parte médica del formulario. El 11 de junio de 2022, la parte apelante entregó el formulario a su plan de salud. El 10 de agosto de 2021 la aseguradora devolvió el documento a la parte apelante debido a un error cometido por la parte apelada en la parte del informe correspondiente al patrono. La parte apelada incorrectamente informó que, la incapacidad reclamada por la parte apelante estaba relacionada con el trabajo, y que, la fecha del accidente fue el 1 de octubre de 2020. En el mes de agosto de 2021 la parte apelante solicitó a la gerente de personal de la tienda la corrección del informe patronal y enviarlo al plan de salud para la continuación del procedimiento administrativo de solicitud de beneficios de SINOT. En el mes de agosto de 2021 la parte apelante presentó una apelación administrativa ante el Departamento del Trabajo y Recursos Humanos sobre su solicitud de beneficios de SINOT, pero al mismo tiempo presentó una reconsideración ante el plan médico. La parte apelante presentó, junto a la

reconsideración: (1) una carta explicativa sobre su situación en particular que, la reclamación al SINOT no estaba relacionada a un caso abierto en el fondo; (2) una certificación de la Corporación del Fondo del Seguro del Estado, con fecha de 18 de enero de 2022 indicando que, la parte apelante se atendía en el fondo por una condición de rodilla derecha, y no por la condición de sus tobillos reportada a SINOT; (3) dos certificaciones médicas reiterando que, los tratamientos y evaluaciones medicas recibidas por la parte apelante no guardan relación con las condiciones evaluadas y tratadas en el fondo. El 29 de diciembre de 2021 el plan de salud de la parte apelante solicitó que ella completara el formulario NR-373 sobre accidente de trabajo. La carta estuvo acompañada de una hoja de "Notificación de Error u Omisión". En la cual el plan médico requirió a la parte apelante presentar evidencia adicional sobre su solicitud de beneficios al SINOT. En respuesta el 25 de enero de 2022 la parte apelante presentó una reconsideración ante el plan de salud sobre el error notificado. El plan médico informó a la parte apelante que no podía atender su solicitud de reconsideración hasta después de culminado el procedimiento administrativo iniciado por la propia parte apelante en el Departamento del Trabajo y Recursos Humanos.

El 28 de febrero de 2022 la parte apelante solicitó a la gerente de personal la preparación de un anejo explicativo de su condición de salud y la razón para la incongruencia que surgía en la solicitud inicial de beneficios. Empero, la parte apelante se negó a preparar el anejo debido qué consideró suficiente la documentación anejada a la reconsideración solicitada ante el plan médico. Finalmente, el 14 de abril de 2022 la parte apelante se comunicó con las oficinas centrales de la parte apelada explicó su situación, el error cometido por la gerente de personal y la omisión de enviar al plan de salud el informe patronal corregido. El asunto

fue referido e investigado por la supervisora de la gerente de personal. El 19 de abril de 2022 la supervisora de la gerente de personal se comunicó con la parte apelante, la parte apelante explicó su situación, y todo lo relacionado al trámite administrado ante el plan de salud y la agencia gubernamental. Posteriormente, la parte apelante llamó a su aseguradora de salud y fue informada sobre la presentación por parte de la supervisora de la gerente de personal de la solicitud corregida, pero que el asunto está sometido a la evaluación del plan y del Departamento del Trabajo y Recursos Humanos. El 28 de febrero de 2022 la parte apelante solicitó una extensión a su licencia sin sueldo. No obstante, el 22 de abril de 2022 la parte apelada informó a la parte apelante mediante carta escrita que, en o antes del 30 de abril de 2022 debía solicitar una extensión a su licencia de ausencia sin sueldo o solicitar acomodo razonable. La parte apelada advirtió a la apelante que de no aprobarse la nueva extensión y esta no regresar a su trabajo antes del 30 de abril de 2022 podría ser despedida de su empleo. El 10 de junio de 2022, la parte apelada informó a la parte apelante mediante carta que, su licencia por enfermedad sin sueldo expiró el 1 de abril de 2022. En la carta la parte apelada informó que, acogió la solicitud del 28 de febrero de 2022 como una de acomodo razonable, no aprobó una nueva solicitud de licencia sin sueldo, y le informaron que, de no regresar a su trabajo le darían de baja el 13 de junio de 2022.

La parte apelante rechazó cualquier posibilidad de acomodo razonable porque según alegó "un acomodo razonable es incongruente de su faz con la situación de salud" de la parte apelante y "su condición de salud en ese momento no le permitía trabajar bajo acomodo razonable". Al momento de su despido la parte apelante estaba acogida a licencia sin paga de sueldo por motivos médicos que, impedían desempeñarse en su trabajo desde

el 29 de abril de 2021, también estaba bajo tratamiento por una lesión en su rodilla derecha en la Corporación del Fondo del Seguro del Estado. La parte apelante estuvo en licencia sin paga desde el 29 de abril de 2021 hasta el momento de su despido el 13 de junio de 2022, nunca regresó a su puesto de trabajo. El procedimiento administrativo ante el Departamento del Trabajo y Recursos Humanos culminó a favor de la parte apelante, los beneficios solicitados fueron aprobados y recibidos por la empleada. La parte apelante recibió el último pago de SINOT el 3 de marzo de 2025.

La parte apelante adjudica responsabilidad jurídica extracontractual a la parte apelada debido a los daños causados sobre la base del relato de hechos de arriba. Reclama daños por hostigamiento, discrimen, humillaciones y actuaciones dolosas de su anterior patrono. La parte apelante bifurcó su reclamo en una reclamación de daños y perjuicios extracontractuales, y otra de daños por despido injustificado. Finalmente dice haber sido víctima de discrimen, pero no identificó la base jurídica sobre la cual reclamó discrimen, si fue discrimen laboral o discrimen por algún impedimento físico o mental. Las reclamaciones de daños y perjuicios extracontractuales que encontramos en la *Demanda* contienen un extenso relato de hechos comprendidos por años de supuestos actos negligentes atribuidos a la parte apelada o a sus agentes. Las actuaciones dolosas de la parte apelada entre los años 2002 y 2014 consistió en no regresar a la parte apelante a su puesto original de recepcionista y haberla sustituido por una persona embarazada.

Ahora bien, entre los años 2014 hasta noviembre de 2021 las actuaciones negligentes atribuidas a la parte apelada consistieron que, los agentes de la parte apelada: (1) "actuaban sin importarles el estado de salud de la demandante,

complicándose su panorama de salud en los turnos de trabajo de la demandante"; (2) "le denegaban a la demandante el derecho a tomar su receso de 15 minutos cuando por su situación de salud le bajaban los niveles de azúcar abruptamente"; (3) "constante el acoso, las discrepancias en directrices y el mal trato dado a la demandante, a pesar de su situación de salud, todo ello creando un ambiente de trabajo hostil y agobiante a la demandante". Según la apelante, "esto, le provocó a la demandante daños y angustias mentales pues por motivo de la falta de empatía y consideración de su patrono, se manchaban sus pantalones y ropa con manchas y hemorragias con sangrado fuerte". Por ello concluye que, estas actuaciones "le provocó daños a su salud tanto física como emocional". Examinadas las fechas de todas estas reclamaciones, desde el 2002 hasta el 2021 estamos obligados a concluir que todas están prescritas.

La parte apelante presentó *Demanda* el 3 de junio de 2025. El plazo de prescripción aplicable a las causas contenidas en la Demanda en las referidas fechas es de un año. Art. 1204, Código Civil, 31 LPRA sec. 9496. En nuestro ordenamiento jurídico se reconocen tres mecanismos que interrumpen los términos prescriptivos dispuestos en ley, a saber: (1) el ejercicio de la acción ante los tribunales; (2) la reclamación extrajudicial; y (3) cualquier acto de reconocimiento de la obligación por parte del deudor. Art. 1197 del Código Civil, 31 LPRA sec. 9489. La parte apelante asegura haber interrumpido el término prescripto mediante una reclamación extrajudicial cursada a la parte apelada el 10 de junio de 2022. Según la alegación número 68 y 69 la parte apelante interrumpió la prescripción:

> Respecto a las amenazas de despido por parte del patrono, la demandante aquí compareciente, mediante carta cursada el día 10 de junio de 2022 por correo certificado número 7021 1970 0001 3325 4485, el

> inmediato el cese y desista de las acciones del patrono en querer dar por terminado el empleo de la señora Mercado Silva. La demandante les solicitó, en ese momento, además, que el patrono hiciera las gestiones necesarias para que el pago correspondiente de un (1) año por SINOT le sea inmediatamente procesado pues había sido la negligencia del patrono lo cual le dificultó ese proceso a la señora Mercado Silva. Dicha carta fue cursada al Sr. Juan Bonilla, Gerente General de la tienda Sam's Club de Mayagüez (#6225) y aquí codemandado.
>
> Que, al respecto, se cursó la misma carta dirigida a las oficinas centrales de Walmart ubicadas en Caguas, Puerto Rico, cursada el 5 de julio de 2022 mediante correo certificado número 7021 0350 0000 0597 4294. Posteriormente, se cursó una contestación a varias alegaciones improcedentes en cuanto a los hechos por parte de su patrono a través de su representación legal mediante misiva fechada el 23 de septiembre de 2022 mediante correo certificado numero 7022 0410 0001 3927 2945.

En nuestra jurisdicción no existen exigencias de forma para realizar una reclamación extrajudicial, ya que, puede ser escrita o verbal. *Díaz Santiago v. Int'l Textiles*, 195 DPR 862, 875 (2016). No obstante, toda reclamación extrajudicial efectiva debe cumplir con los requisitos siguientes: (1) ser oportuna; (2) presentarla una persona con legitimación; (3) el medio utilizado para hacer la reclamación debe ser idóneo, y (4) *debe existir identidad entre el derecho reclamado y el afectado por la prescripción. Íd.* Conforme expuesto por la parte apelante, este reclamó extrajudicialmente solo en torno a la causa de acción por despido injustificado y el procedimiento ante SINOT. En *Galib Frangie v. El Vocero de P.R.,* 138 DPR 560, 568 (1995), el Tribunal Supremo estableció que, para interrumpir un término prescriptivo, el acreedor debe efectuar una reclamación extrajudicial de "forma clara e inequívoca, que no deje dudas acerca de su intención". Es preciso que, el acreedor del derecho identifique claramente tanto al deudor como al acreedor e indique los elementos necesarios para entablar su reclamación. *Meléndez Guzmán v. Berrios López,* 172 DPR 1010, 1029–1030

(2008) Ciertamente, en este caso la parte apelante nunca envió una comunicación a la parte apelada reclamando el pago de los daños extracontractuales relatados en la *Demanda*.

El requisito de identidad que requiere la interrupción es que existe identidad entre los derechos, el derecho a no sufrir daños por actuaciones negligentes de otro, y el derecho que se pretende interrumpir, el resarcimiento de los daños extracontractuales. *Díaz Santiago v. Int'l Textiles*, *supra*, pág. 875. Las cartas del 10 de junio de 2022 y del 5 de julio de 2022 carecen del requisito de identidad entre el derecho reclamado y el afectado por la prescripción, no sirvieron para interrumpir algún termino prescriptivo. En consecuencia, al momento de presentar la *Demanda* todas las causas de acción por daños extracontractuales estaban prescritas.

Finalmente, están las actuaciones negligentes ocurridas desde el 29 de abril de 2021 hasta el 13 de junio de 2022. El principal motivo de pedir de la parte apelante durante este periodo de tiempo está cimentado sobre el error de la parte apelada al llenar el informe de patrono en la solicitud de beneficios de SINOT: la parte apelada identificó incorrectamente el origen de la incapacidad laboral de la parte apelante. Esto resultó en la equivocada apreciación por la aseguradora en que, la reclamación de compensación de la parte apelante estaba atada a un caso abierto ante la Corporación del Fondo del Seguro del Estado. En agosto de 2021 a instancias del plan de salud, la parte apelante reclamó la corrección del error a la apelada, pero no fue hasta el mes de abril o mayo de 2022 cuando finalmente la parte apelada envió el formulario corregido al plan de salud de la parte apelante. Empero, en el mismo mes de agosto de 2021 la parte apelante presentó una apelación administrativa ante el Departamento del Trabajo y Recurso Humanos. Procedimiento Administrado que, culminó casi cuatro años después cuando la parte apelante pudo

recibir los beneficios provenientes de SINOT. No obstante, la parte apelante atribuye la tardanza en recibir los beneficios de SINOT únicamente a la parte apelada. Sin embargo, la parte apelante obvia en su consideración el trámite gubernamental comenzado por ella ante el Departamento del Trabajo y Recursos Humanos al mismo tiempo en que reclamó a la parte apelada la corrección de la información en el formulario. Esto provocó que, cuando la parte apelante acudió al plan de salud con el documento corregido, la aseguradora no pudo actuar sobre el documento debido a la apelación administrativa pendiente ante el Departamento de Trabajo y Recursos Humanos.

Para imponer responsabilidad en una causa de acción por responsabilidad civil extracontractual, nuestro ordenamiento requiere la concurrencia de tres elementos: 1) que se establezca un daño sufrido; 2) que exista la relación causal entre el daño y la acción u omisión de un tercero; y 3) que dicho acto u omisión sea culposo o negligente. *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010). La negligencia consiste en no precaver las consecuencias lógicas de una acción u omisión que cualquier persona prudente hubiese previsto bajo las mismas circunstancias. *López v. Porrata Doria*, 169 DPR 135, 164 (2006). La determinación de negligencia se basa en la consideración objetiva de lo que hubiese podido anticipar o prever, bajo las mismas circunstancias, un hombre prudente y razonable. *López v. Dr. Cañizares*, 163 DPR 119, 132 (2004).

Este elemento de previsibilidad está relacionado con el requisito de nexo causal. En nuestro ordenamiento jurídico extracontractual, gobierna la doctrina de la causalidad adecuada, la cual indica que, no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general. *Santiago v. Sup. Grande*, 166

DPR 796, 818–819 (2006). Es decir, en este caso correspondía a la parte apelante mediante en sus alegaciones establecer mediante relato de hechos concretos y específicos la existencia de un nexo causal entre el error cometido por la parte apelada al llenar la primera solicitud de beneficios de SINOT y el largo procedimiento administrativo acaecido a la apelación administrativa presentada por la propia parte apelante ante el Departamento del Trabajo y Recursos Humanos. *Pacheco v. A.F.F.*, 112 DPR 296, 302 (1982). Es nuestra opinión que el error cometido por la parte apelada no es la causa idónea en la dilatación del procedimiento para que la parte apelante pudiera obtener los beneficios del SINOT. A fin de establecer esa vinculación de causa y efecto la parte apelante atribuyó concluyentemente responsabilidad absoluta a la parte apelada por la tardanza en la obtención de sus beneficios. Esto en total abstracción de sus propias actuaciones que, con mayor probabilidad causaron el desenlace antes descrito. En vista de ello, es nuestro parecer que la omisión de la gerente de personal en no corregir el formulario no es suficiente hecho como condición de que la parte apelante no pudiera comenzar a recibir los beneficios de SINOT en una fecha no especificada en el año 2024. Al contrario, según la experiencia general, sí puede ocurrir a causa de un procedimiento administrativo gubernamental que, regularmente trae aparejado el resultado aquí ocurrido, la tardanza inesperada en la resolución final del asunto presentado por la propia parte apelante ante el ente gubernamental. *Estremera v. Inmobiliaria Rac, Inc.*, 109 DPR 852, 857 (1980). Por tanto, en cuanto a la reclamación torticera fundamenta en el error cometido por la parte apelada en el formulario de SINOT, concluimos falta de nexo causal entre el daño, la tardanza en la aprobación de los beneficios, y la actuación negligente atribuida a la parte apelada. En consideración a estos hechos, y a la teoría de la causalidad la

parte apelante no puede atribuir la tardanza del suceso a la parte apelada pues fueron sus propias actuaciones las que encausaron el trámite administrado, y la rapidez o lentitud de proceso no puede ser atribuido a la parte apelada.

Agregue que, según la *Demanda*, el único daño acaecido por la tardanza es que, la parte apelante no pudo recibir los pagos de SINOT durante su licencia sin sueldo por enfermedad, pero eventualmente pudo recibir todos los pagos en virtud de los beneficios de SINOT. El daño es definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". Camacho *Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 42; *López v. Porrata Doria*, 169 DPR 135, 151 (2006). De no existir daño o perjuicio, no existe obligación de indemnizar. *López v. Porrata Doria, supra*, pág. 151. Esta causa de acción no solamente carecer de nexo causal entre el daño reclamado y la actuación negligente esgrimida, sino que, los daños reclamados fueron remediados, aunque tarde.

Por último, la parte apelante fue despedida de su empleo el 13 de julio de 2022. Este presentó su demanda sobre despido injustificado el 3 de julio de 2026. La parte apelante interrumpió el término prescriptivo de un año aplicable a las acciones de despido injustificado mediante sus reclamaciones extrajudiciales del 10 de junio de 2022 y 5 de julio de 2022. 29 LPRA sec. 185l. El nuevo término prescriptivo culminó el 5 julio de 2023. El 7 de julio de 2023 la parte apelante envió una nueva reclamación extrajudicial sobre despido injustificado, y otra más el 5 de junio de 2025. Como vimos, la prescripción de la causa de acción por despido injustificado expiró el 5 de julio de 2023, por lo que la parte apelante no interrumpió el plazo alguno con su reclamación extrajudicial del 7 de julio de 2023. Por tanto, presentó su

reclamación judicial sobre despido injustificado expirado el plazo de prescripción dispuesto para ello.

En consideración a todo este análisis, concluimos que, no erró el foro primario al desestimar la *Demanda*, con perjuicio, por dejar de incluir una reclamación que justifique la concesión de un remedio judicial.

***-IV-***

Por los fundamentos expuestos en esta sentencia, los cuales hacemos formar parte de este dictamen, *confirmamos* la sentencia apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones
